CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 31 2015

JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| HOWARD Z. GARNETT,<br>Petitioner, | )<br>)<br>) | Civil Action No. 7:14-cv-00452 |
| | ) | MEMORANDUM OPINION |
| v. | )<br>) | By: Hon. Glen E. Conrad |
| HAROLD W. CLARKE,<br>Respondent. | )<br>)<br>) | Chief United States District Judge |

Howard Z. Garnett, a Virginia inmate, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his 2004 convictions for abduction with intent to defile, rape, animate object penetration, and domestic assault (third offense). After review of the record in this case, as well as trial and habeas corpus records provided from the state courts, the court concludes that respondent's motion to dismiss must be granted.

## Background

A Madison County Circuit Court jury found Garnett guilty of abduction with intent to defile under Va. Code Ann. § 18.2-48(ii), rape under Va. Code Ann. § 18.2-61, animate object penetration under Va. Code Ann. § 18.2-67.2, and assault and battery of a family member (third offense) under Va. Code Ann. § 18.2-57.2 on February 19, 2004.[1] (Case Nos. CR 03-4032, CR 03-4033, CR 03-4034, and CR 03-4035.) In its direct appeal opinion, the Supreme Court of Virginia summarized the evidence relevant to the convictions as follows:

> Victoria Duff met Garnett in 2001 when he sold her a parcel of land in Madison County adjacent to the farm where he lived with his mother. Duff soon began a consensual sexual relationship with Garnett and lived with the Garnetts in their farmhouse while Duff built a house on the parcel she had purchased. When her

---

[1] The jury acquitted Garnett of two other rape charges.

house was completed in August 2002, Duff moved out of the Garnett home. According to Duff, she ended the sexual relationship with Garnett around November 2002, but the two maintained contact because of the proximity of their homes. Duff alleged that Garnett was verbally and physically abusive throughout the relationship.

Duff testified at trial that on July 24, 2003, she drove to the barn on Garnett's farm to retrieve some property she had stored there. As Duff loaded the items into her truck, Garnett approached her and told her not to remove the items. Duff complied and attempted to leave, but Garnett told her that he wanted her to stay and took her truck keys by force, painfully bending her hand back when she attempted to stop him. Garnett then walked to his nearby house and Duff followed asking for her keys. After collecting some items from the kitchen of the house, Garnett returned to the barn with Duff still following and asking for her keys. Duff did not seek any assistance from Garnett's mother, whom she had seen in the kitchen, or a Department of Transportation road crew paving the road a few hundred feet from the barn. At that point, Garnett told Duff "there was something in the barn that was mine that he wanted to give to me, so I followed him into the barn."

Garnett sat in a chair in the barn and pulled Duff onto his lap. Duff said that she repeatedly objected to Garnett's advances and demanded Garnett return her keys. When Duff attempted to leave the barn, Garnett physically blocked her escape. Garnett then pushed Duff to the back of the barn where he threatened her, swung his fist and a hoe at her, and pulled her hair and ears. When Duff tried to scream, Garnett held his hand over her face. Garnett bent Duff over a waist-high wall in the back of the barn, pulled down her shorts, and penetrated her vagina with his fingers and penis. Garnett then drove Duff in her truck to her house, left the keys, and walked home. Duff then drove herself to the Madison County Sheriff's Office.

When Duff arrived at the sheriff's office, her clothes were dirty and in disarray. Her face was red and puffy and she bore scratches and bruises on her body. She made a short written statement of the foregoing events on a one-page police form. A deputy drove her to the emergency room at the University of Virginia hospital for a sexual assault examination by a forensic nurse. During the examination, the forensic nurse detected bruising and abrasions on Duff's hands, legs, buttocks, and face, as well as genital injuries consistent with recent sexual penetration. However, no trace of ejaculate was detected. DNA recovered from Duff's ears, cheeks, and neck was subsequently analyzed by the Division of Forensic Science, which determined that it was between 55 trillion to 440 trillion times more likely

2

that the DNA originated from Duff and Garnett than from Duff and any unidentified third person.

Following the forensic examination, Duff returned to the sheriff's office where she was interviewed by Investigator Michael. Duff participated in another interview with Investigator Michael on July 31, 2003. Both of the interviews were audio recorded and subsequently transcribed. In the July 24 interview, Duff indicated that Garnett had raped her on prior occasions. In the July 31 interview, Duff provided additional information alleging Garnett had previously raped her on January 19 and April 29, 2003. Garnett was arrested and later indicted upon charges of felony abduction with intent to defile, felony assault and battery of a former household member, animate object penetration, and three counts of rape.

Garnett v. Commonwealth, 275 Va. 397, 400-01, 657 S.E.2d 100, 103 (2008). During trial, the Commonwealth presented testimony from Duff, the police officers and forensic examiners who investigated the case, the sexual assault nurse who examined Duff, a nurse practitioner who examined Duff after the alleged January rape, a friend of Duff's whom Duff was with after the alleged April rape, and a psychologist who diagnosed Duff with post-traumatic stress disorder. The defense presented testimony from a medical expert in sexual assault, several acquaintances of Duff's and Garnett's who testified regarding their continuing relationship, and Garnett's mother. Garnett himself did not testify. At the conclusion of the trial, the jury acquitted Garnett of the rape charges from January 19, 2003 and April 29, 2003, but convicted him of all four charges relating to July 24, 2003. On December 1, 2004, the trial court imposed the sixty-five-year sentence recommended by the jury.

Garnett noted an appeal to the Court of Appeals of Virginia. On April 11, 2006, a panel of the Court of Appeals reversed Garnett's convictions because it concluded that the prosecution had failed to disclose material exculpatory evidence pursuant to Brady v. Maryland, 373 U.S. 83 (1963). Garnett v. Commonwealth, 2006 Va. App. Lexis 143, Record No. 3027-04-2 (Apr. 11, 2006). The Commonwealth petitioned the court for a rehearing en banc, which was granted.

The full Court of Appeals reversed the panel and affirmed Garnett's convictions, finding that the prosecution had disclosed all exculpatory and impeachment material in the summaries it had provided Garnett and that Garnett had experienced no prejudice from the fact that the prosecution did not hand over the transcripts of the victim's police interviews. Garnett v. Commonwealth, 49 Va. App. 397, 657 S.E.2d 782 (2008). The Supreme Court of Virginia awarded Garnett an appeal on September 6, 2007, but ultimately affirmed the Court of Appeals in an opinion issued on February 29, 2008. Garnett v. Commonwealth, 275 Va. 397, 657 S.E.2d 100 (2008). Garnett filed a petition for a writ of certiorari with the United States Supreme Court, which was denied on October 6, 2008. Garnett v. Virginia, 555 U.S. 853 (2008).

Garnett filed a petition for a writ of habeas corpus with the Madison County Circuit Court on March 2, 2009, in which he claimed that his trial counsel were constitutionally ineffective for (1) failing to introduce testimony from members of a road crew who were paving the road near Garnett's barn on July 24, 2003; (2) failing to present the testimony of two members of the road crew who allegedly spoke with Garnett that morning in Duff's presence; (3) failing to present evidence regarding steps and a door inside the barn; (4) failing to present evidence that Duff and Garnett had traveled to a store in Harrisonburg and purchased supplies on April 29, 2003, the date of the second alleged rape; and (5) failing to advise Garnett of his right to testify and to permit him to testify. Petitioner also asserted and that the aggregate prejudice from counsel's errors justified relief. (Record No. CL09-2367.) On August 11, 2010, the Circuit Court denied his petition without conducting an evidentiary hearing. Upon appeal to the Supreme Court of Virginia, the court reversed the Circuit Court and remanded the case for an evidentiary hearing.

The Circuit Court held an evidentiary hearing on October 12, 2012. After hearing the evidence, the Circuit Court denied Garnett's petition on May 6, 2013. In its letter opinion, the Circuit Court made the following findings of fact and conclusions of law: (1) trial counsel's decision not to introduce testimony from any of the road crew members violated neither prong of Strickland v. Washington, 466 U.S. 668, 687 (1984), because (a) it was a part of their trial strategy and based on sound professional judgment, and (b) there was no reasonable probability that evidence that the potential witnesses saw and heard nothing would have changed the outcome of the trial; (2) trial counsel were not constitutionally ineffective under Strickland when they did not present evidence regarding steps and a door inside the barn, because Garnett never provided this evidence to counsel but instead provided counsel with contradictory evidence; (3) trial counsel's decision not to include evidence of the April 29, 2003 shopping trip was consistent with their reasonable trial strategy, and Garnett cannot prove that prejudice resulted from the evidence's exclusion because he cannot predict how the jury would have interpreted the evidence; (4) trial counsel advised Garnett of his right to testify, and Garnett made the choice not to testify; and (5) Virginia law does not recognize an aggregate prejudice claim, but, if it did, the record does not establish that any errors of defense counsel would have established aggregate prejudice in this case where counsel put on a vigorous defense and impeached Duff in multiple ways. Garnett v. Johnson, No. CL09-2367 (Madison County Cir. Ct. Feb. 7, 2013) (Doc. No. 7-10). The Supreme Court of Virginia denied Garnett's petition for appeal on October 13, 2013 and his petition for rehearing on January 21, 2014.

Garnett timely filed his petition in this court on August 28, 2014. In it, he makes the following claims: (I) Trial counsel were constitutionally ineffective for failure to present: (a) testimony from two members of a crew paving the road in front of Garnett's barn on July 24,

2003, that they saw and heard nothing unusual in the vicinity of the barn that day; (b) testimony from two road crew members who allegedly spoke to Garnett and Duff on the morning of July 24, 2003; (c) evidence that on July 24, 2003, there were no steps on the office side of the barn, and the door separating the office from the barn's milking parlor was bolted closed; (d) evidence that on April 29, 2003, Garnett and Duff drove to Wetsel, Inc., in Harrisonburg, Virginia, and purchased fertilizer and materials for a greenhouse; and (e) evidence (allegedly withheld by the Commonwealth) that Duff told a police investigator that she had gone to Wetsel with Garnett after being physically and sexually assaulted on April 29, 2003; (II) trial counsel were ineffective for failing to advise Garnett of his right to testify and/or for failing to permit Garnett to testify; and (III) all of trial counsel's above-claimed errors resulted in prejudice that must be viewed in the aggregate.

## *Standard of Review*

The court must consider habeas petitions filed under section 2254 under the requirements set forth in 28 U.S.C. § 2254(d). Section 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of that claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A claim is considered "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree."

6

Young v. Catoe, 205 F.3d 750, 755 (4th Cir. 2000) (quoting Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)). A state court adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court ruling is "unreasonable" if it "identifies the correct governing legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. This reasonableness standard is an objective one. Id. at 410. "[W]e will not discern an unreasonable application of federal law unless 'the state court's decision lies well outside the boundaries of permissible differences of opinion.'" Tice, 647 F.3d at 108 (quoting Goodman v. Bertrand, 467 F.3d 1022, 1028 (7th Cir. 2006)). A federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231. 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)); Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).

### *Discussion*

The Commonwealth concedes that claims I(a) through (d), claim II, and part of claim III are exhausted, having been adjudicated on the merits by the state court. The court will first consider whether the state court's rulings on those claims were either contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts. The court will then address the remaining claim I(e) and portion of claim III.

*Claim I(a)*

In his first claim of ineffective assistance of trial counsel, Garnett asserts that counsel's choice not to call two members of a crew paving the road in front of the barn where the abduction and rape took place on July 24, 2003, was constitutionally deficient and prejudiced the outcome of the trial. In sworn statements presented to the state habeas court, two of the crew members, Gregory Bauer and Joe English, stated that they were present at the trial but not called to testify. They both stated that they would have testified that they were present at the road in front of the Garnett barn on July 24, 2003, and they did not notice anything unusual happening on the property. Petition for a Writ of Habeas Corpus, Ex. 1, 7, Garnett v. Johnson, No. CL09-2367 (Madison County Cir. Ct. Feb. 27, 2009) (Doc. No. 7-6).

The state habeas court rejected this claim on its merits, ruling that Garnett had met neither the performance nor the prejudice prong of Strickland. A petitioner claiming ineffective assistance of counsel must satisfy the two-pronged test set forth in Strickland. The first prong of Strickland requires a petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," meaning that counsel's representation fell below an objective standard of reasonableness."[2] Strickland, 466 U.S. at 687-88. The second prong of Strickland requires a petitioner to show that counsel's deficient performance prejudiced him or her by demonstrating a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine the confidence of the outcome." Id.

---

[2] Strickland establishes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. "Judicial scrutiny of counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight . . . and to evaluate the [challenged] conduct from counsel's perspective at the time." Id.

The state court concluded that trial counsel made a reasonable strategic decision not to call these witnesses who would have only added that they saw and heard nothing unusual that day. The court reasoned that this kind of "saw-nothing" testimony would not have created a reasonable probability of a different result had it been presented. (Doc. No. 7-10 at 2.) The Fourth Circuit has acknowledged that in evaluating an ineffective-assistance claim, "we give counsel wide latitude in determining which witnesses to call as part of their trial strategy." United States v. Dyess, 730 F.3d 354, 364 (4th Cir. 2013). See Wilson v. Greene, 155 F.3d 396, 404 (4th Cir. 1998) (quoting Pruett v. Thompson, 996 F.2d 1560, 1571 n.9 (4th Cir. 1993)) ("Decisions about what types of evidence to introduce 'are ones of trial strategy, and attorneys have great latitude on where they can focus the jury's attention and what . . . evidence they can choose not to introduce.'") At trial, the jury heard testimony that the road crew was paving the road with heavy, loud equipment all day and that, when Duff attempted to scream for help during the assault, Garnett covered her mouth with his hands. It was not unreasonable for the state court to conclude, therefore, that trial counsel made a reasonable strategic decision that calling these witnesses would not have aided the defense's case. Nor was the state court unreasonable in determining that the choice to forgo these witnesses did not result in prejudice to Garnett. Because the state court's ruling was neither contrary to, nor an unreasonable application of, Strickland and was not based on an unreasonable determination of the facts, claim I(a) has no merit.

*Claim I(b)*

Garnett's second sub-claim asserts that his trial counsel were ineffective for not presenting the testimony of the two members of the road crew with whom Garnett alleges he and Duff spoke on the morning of July 24, 2003. Garnett presented no sworn statements to the state

9

habeas court supporting these allegations, but he testified at the evidentiary hearing that he spoke with two members of the crew about taking their leftover asphalt at the end of the day. He testified that Duff was present for these conversations and did not appear to be in any distress or make any complaints to the road crew members.

The state court's rejection of this claim was not contrary to or an unreasonable application of Strickland or based on an unreasonable determination of the facts. The evidence at trial showed that Duff arrived at Garnett's place early in the morning on July 24, 2003, and although Garnett had taken her keys, she walked with him around the property and to his mother's house before returning to the barn, where Garnett assaulted her around noon. Had the jury heard testimony that Duff and Garnett spoke with road crew members at some point in the morning, it would have been perfectly reasonable for them to conclude that the rape and abduction in the barn happened exactly as Duff described, after the alleged conversation with the potential witnesses. Throughout the trial, defense counsel attacked Duff's credibility and argued that Duff and Garnett had an ongoing relationship that undermined her allegations of rape and assault. Counsel's decision not to call these witnesses does not demonstrate deficient performance, nor has Garnett proven that it resulted in any prejudice to him. Claim I(b) has no merit.

*Claim I(c)*

In his third sub-claim, Garnett argues that his trial counsel were constitutionally ineffective for not presenting evidence about the state of the interior of the barn, which he argues would have undermined Duff's depiction of the events of July 24, 2003. At trial, Duff testified that after Garnett made unwanted advances toward her when they entered the barn, Garnett pushed her up some steps into the back of the barn, bent her backwards over a half wall, and

raped her. Duff illustrated her testimony with a diagram of the barn, as well as pictures of its interior. Garnett claims that Duff's testimony was false because there were no steps at that time in the barn and that there was a door, which was bolted shut, separating the front from the back of the barn. In support of this claim, Garnett testified at his evidentiary hearing and provided a sworn statement from Chris Artale, who purchased the land and the barn from the Garnetts around February 9, 2004. Artale stated that, when he purchased the barn in 2004, the door separating the sections of the barn was sealed closed and had to be broken to be opened. (Doc 7-6, Ex. 2.)

The state habeas court ruled that trial counsel's failure to put on this evidence violated neither prong of Strickland. The court rejected Garnett's testimony and concluded that he never provided evidence about the steps or the door to counsel at the time of trial. Indeed, the court pointed out that trial counsel used photographs of the interior of the barn at trial with Garnett's full knowledge. (Doc. No. 7-10 at 2-3.) The court's conclusion that trial counsel's performance was not deficient is not unreasonable. The only potentially credible evidence that the door was bolted shut came from the statement of a person who had personal knowledge of the condition of the barn seven months after the rape and abduction took place. The photographs at trial supported Duff's testimony regarding the events. Garnett has thus not provided clear and convincing evidence that this missing evidence would have raised a reasonable probability of a different outcome. Because the state court's ruling was neither contrary to, nor an unreasonable application of, clearly established federal law and was not based on an unreasonable determination of the facts, claim I(c) has no merit.

*Claim I(d)*

In his fourth sub-claim, Garnett argues that trial counsel were ineffective for failing to provide evidence that Duff and Garnett traveled over an hour to Harrisonburg, Virginia, and back on April 29, 2003, the day of the second charged rape. Garnett presented the state court with sales invoices and shipping tickets from Wetsel, Inc., dated April 29, 2003, which indicated that Duff purchased rolls of plastic and garden fertilizer for Spring Water Farm, Garnett's farm. The shipping tickets included directions to the farm. Garnett claims that his counsel were in possession of this evidence at trial but did not use it, even though it would have proven that Duff was lying about the rape on April 29, 2003, and therefore undermined her credibility enough to have allowed for an acquittal of the July 24, 2003 rape.

The state habeas court rejected this claim because of the multiple interpretations a jury may have made of this evidence. The court pointed out that, with no proffered testimony from any witness placing Duff and Garnett at Wetsel on that date, the jury could have interpreted the evidence to mean that the delivery of the items was scheduled for April 29. Had the jury believed that the evidence indicated what Garnett claims, they may have only weighed it in connection with the April 29, 2003 charge, of which Garnett was acquitted. (Doc. No. 7-10 at 4-5.) The court was thus not convinced that Garnett had proven that the missing evidence created a reasonable probability that the jury would not have convicted Garnett of the charges arising from the July 24, 2003 assault.

The state court's reasoning is neither contrary to, nor an unreasonable application of, Strickland, nor is it based on an unreasonable determination of the facts. Trial counsel's strategy was to establish that Duff and Garnett had maintained a relationship beyond the date that Duff stated it ended. Counsel called witnesses who testified to seeing Duff and Garnett together in the

12

context of their business dealings throughout the first six months of 2003. Counsel repeatedly challenged Duff's credibility, particularly in regards to why she would maintain a relationship with a man she asserted had raped and beaten her multiple times. It is not unreasonable to conclude that counsel made a strategic decision not to include the Wetsel evidence as cumulative of the other evidence establishing their ongoing relationship or as inconclusive, as the state court viewed it. Furthermore, Garnett has not established prejudice resulting from the omission of this evidence. It is entirely reasonable that the court could have believed that Garnett raped Duff on the morning of April 29 and then convinced or forced her to go buy greenhouse supplies later that day. Considering that the jury did not find the evidence sufficient to convict Garnett of the April 29, 2003 rape charge, it is also a reasonable conclusion that the jury may have credited the evidence but still believed Duff's testimony regarding the crimes of conviction, particularly because that testimony was bolstered with testimony from police officers, a sexual assault nurse who examined Duff on July 24, 2003, photographs, and forensic evidence. Claim I(d), therefore, has no merit.

*Claim II*

Garnett also claims that his trial counsel were constitutionally ineffective because they did not advise him of his right to testify, and they did not permit him to testify. At the state habeas evidentiary hearing, Garnett testified that his counsel never advised him that he had an absolute right to testify, and he never was given the chance to assert that he wanted to testify. Garnett's trial counsel also testified at the evidentiary hearing that they indeed discussed the possibility of Garnett's testimony. Attorney Lawrence explicitly stated that they advised Garnett of his right to testify at trial, and Attorney Quagliana confirmed that they had discussed whether it would be in Garnett's best interest to testify at trial. They admitted that they advised him

13

against testifying and confirmed that he made his own decision not to testify. (Doc. No. 7-10 at 5.)

In the face of the contradictory testimony, the state habeas court credited the testimony of both attorneys over that of Garnett. Garnett has not shown by clear and convincing evidence that this finding of fact is incorrect. Furthermore, the state court concluded that Garnett's testimony would not have led to a reasonable probability of a different result. Given the inconsistencies in Garnett's presentation of facts throughout the record, this court cannot conclude that the state court's ruling was an unreasonable application of either prong of Strickland or was based on an unreasonable determination of the facts. Claim II, therefore, has no merit.

*Claim III*

Garnett asks the court in Claim III to consider all of the alleged errors of counsel and their prejudicial effect on his trial in the aggregate and in light of the totality of the circumstances. The state habeas court rejected this claim on two grounds: (1) Virginia law does not recognize such aggregate prejudice claims, and (2) the claim failed on its merits. The court noted that the case "was a long, hotly contested trial in which defense counsel attacked the credibility of the victim in multiple ways." The court also pointed to the two acquittals defense counsel achieved in its consideration of the totality of the circumstances. (Doc. No. 7-10 at 6.)

The state court's ruling was neither contrary to, nor an unreasonable application of, clearly established federal law. Having concluded that trial counsel's performance was not deficient and that none of those alleged errors resulted in prejudice, the court's determination regarding aggregate prejudice withstands scrutiny. See Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir. 1998) ("Having just determined that none of counsel's actions could be considered constitutional error, . . . it would be odd, to say the least, to conclude that those same actions,

when considered collectively, deprived Fisher of a fair trial."). Even assuming, arguendo, that all of the evidence Garnett claims was missing from the trial had been presented to the jury, that assumption still does not raise a reasonable probability that the outcome would have been different. The Commonwealth presented a good deal of evidence beyond Duff's testimony, including physical and expert evidence, that supported conviction. Defense counsel impeached Duff and challenged her credibility multiple times and presented much evidence in support of its theory that Duff was a disgruntled ex-girlfriend. The jury could reasonably have credited all of the missing evidence and still convicted Garnett based upon the Commonwealth's presentation. Claim III has no merit.

*Claims I(e) and III*

Respondent argues that Garnett's Claim I(e) and the portion of Claim III that incorporates I(e) are not exhausted and should be dismissed because Garnett never presented them to the state court. "[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) (citing O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999)); 28 U.S.C. § 2254(b)(1). In order to satisfy the exhaustion requirement, the federal claim must be "fairly presented" to the state court. Picard v. Conner, 404 U.S. 270, 275 (1971). "[B]oth the operative facts and the controlling legal principles must be presented to the state court." Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997).

Garnett's Claim I(e) appears, on its face, to be a claim for ineffective assistance of counsel based on counsel's failure to discover, present, and/or argue that the Commonwealth withheld evidence that was exculpatory and/or impeaching. Embedded within that claim, Garnett seems also to be asserting a claim for prosecutorial misconduct under Brady. To the

extent that this claim is an ineffective assistance of counsel claim, the court agrees with the respondent that Garnett never presented the claim to the state court and thus never exhausted it. "A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." Baker, 220 F.3d at 288; see also Gray v. Netherland, 518 U.S. 152, 161 (1986). If Garnett were to attempt now to raise this claim in state court, it would be procedurally barred pursuant to Va. Code Ann. § 8.01-654(B)(2) (requiring habeas petitioners to raise all available grounds for relief in their first state petition for a writ of habeas corpus). Because Garnett knew of the facts supporting this claim at the time of his state habeas petition, he cannot demonstrate cause and prejudice to excuse the default. The portion of Claim I(e) that constitutes an ineffective assistance of counsel claim and the portion of Claim III that asserts prejudice based on this claim are, therefore, dismissed.

To the extent that the claim is one of prosecutorial misconduct based on the Commonwealth's failure to disclose exculpatory or impeaching evidence, the court rules that Garnett exhausted this claim by presenting it to the Supreme Court of Virginia in his direct appeal. The Virginia Supreme Court denied this claim on its merits, concluding that the Commonwealth had disclosed all material exculpatory and impeaching evidence by providing Garnett with summaries of interviews Duff had with investigators and the prosecutor. Garnett, 275 Va. at 410, 657 S.E.2d at 108. The Court further concluded that Garnett suffered no prejudice by not being given the verbatim transcripts of the interviews because the transcripts presented no impeachment evidence different from that in the disclosures that could have resulted in a reasonable probability that the outcome would have been different. Id. at 418, 112.

16

Garnett claims that the state court's Brady ruling was unreasonable and that the prosecutor knowingly presented Duff's perjured testimony regarding the events of April 29, 2003, because in an interview with Investigator Michael, Duff stated that Garnett had made her go to Wetsel in Harrisonburg after he raped and assaulted her on April 29, 2003. Garnett is mistaken. Neither the Commonwealth nor the defense raised the issue of the Wetsel trip with Duff during trial, so Duff had no opportunity to lie about the trip. Had the defense presented the Wetsel evidence in an effort to impeach Duff or challenge her testimony regarding the sequence of events on April 29, 2003, there is a reasonable probability that she would have testified to precisely the same thing that she told Investigator Michael:

> And [ ] he and I started to pull off rapidly but apparently not rapidly enough because he got in the back of the truck and [ ] I was driving very fast down the road hoping that it would get him off the back of the truck but he it didn't, eventually he managed to come around into the passenger side door and [ ] grab the keys away from me and stopped the car and pulled me across the seat he wouldn't let me go out the door because he knew I would escape so he pulled me across the him and the he got behind the wheel and [ ] drove like a maniac and [ ] eventually he came back to the house [ ] and told me I would be doing whatever he wanted to do today that and he told me I had to go to Harrisonburg to a place and buy some fertilizer and [ ] some plastic sheeting for a green house and brought me home and the next day I went to work.

(Doc. No. 1-1, Ex. 10.) Nothing in Duff's statement contradicts the testimony she presented at trial. Indeed, the statement undermines the value of the Wetsel evidence from Claim I(d) by providing a reasonable explanation of it. In its direct appeal opinion, the Supreme Court paid particular attention to the fact that, in response to trial counsel's Brady requests, the trial court reviewed all of Duff's statements in camera and compared them to the summary disclosures made by the Commonwealth. Garnett, 275 Va. at 104, 657 S.E.2d at 403. The trial court concluded that all exculpatory and impeachment evidence had been disclosed, and based on its own review of the statements and the testimony at trial, the Supreme Court agreed. Id. at 111,

17

415. Garnett has not proven that the state court's ruling was contrary to or an unreasonable application of <u>Brady</u> or based on an unreasonable determination of the facts. Claim I(e), therefore, has no merit.

## *Conclusion*

For the reasons stated herein, the court concludes that respondent's motion to dismiss must be granted. The court grants respondent's motion to dismiss Garnett's petition for a writ of habeas corpus. An appropriate order will enter this day.

The Clerk is directed to send a copy of this memorandum opinion and the accompanying order to the petitioner and to all counsel of record.

ENTER: This __31st__ day of August, 2015

_____
CHIEF UNITED STATES DISTRICT JUDGE